UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>JENIFER WAHL,<br><br>　　　　　Defendant. | 5:23-50013-KES<br><br><br>ORDER ADOPTING REPORT & RECOMMENDATION DENYING MOTION TO SUPPRESS |

Defendant, Jenifer Wahl, is charged two counts of conspiracy to distribute a controlled substance in violation of 18 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), and one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Docket 1. Wahl moves to suppress evidence seized during the October 17, 2022 traffic stop of her vehicle, the search of her mobile phone seized during that stop, the November 11, 2022 search of her home, and any statements made during those incidents. Docket 32 at 1. Wahl contends that the seizure of her vehicle was conducted without reasonable suspicion. *Id.* As a result, Wahl asserts that her Fourth Amendment rights were violated during her detention and search, and that all subsequent statements and searches must be suppressed as fruit of the poisonous tree. Docket 34 at 1.

The court referred Wahl's motion to Magistrate Judge Daneta Wollmann under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing on October

4, 2023, Magistrate Judge Wollmann recommended denying Wahl's motion to suppress. Dockets 37, 56. Wahl objects to the Report and Recommendation. Docket 57. After a de novo review of the Report and Recommendation and the record, the court adopts the Report and Recommendation in full and denies Wahl's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 59 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTUAL BACKGROUND

After a de novo review, the court makes the following pertinent factual findings necessary to resolve this dispute:

In late 2021 or early 2022, multiple informants disclosed to law enforcement that Amanda Vu was a supplier of illegal drugs. Docket 44 at 5–6.

Law enforcement began an investigation of Vu. *Id.* at 6. Law enforcement conducted surveillance of Vu's home and electronic tracking surveillance of two of her vehicles, a Mini Cooper and Nissan Titan. *Id.*

As part of this investigation, Detective Ryan Gebhart of the Rapid City Police Department Unified Narcotics Enforcement Team requested a search warrant for Vu's Facebook account. *Id.* at 4, 7. Facebook sent law enforcement the contents of Vu's account in June of 2022. *Id.* The records covered the period between January 1, 2022, and May 25, 2022. *Id.* at 11. In reviewing Vu's Facebook records, law enforcement discovered an ongoing Facebook messenger conversation between Vu and Wahl in which they appeared to discuss and arrange the sale of illegal drugs. *Id.* at 13; *see also* Docket 40 at 5–38. Detective Gebhard testified that he was aware that the conversation concerned drug transactions because of the discussion of meeting locations, requests by Wahl that Vu provide her with quantities of what she referred to as the "new" and the "old,"[1] and references to cutting product to increase profit. Docket 44 at 13–18. Wahl at one point sent Vu a message that read "2" followed by a snowflake emoji. *Id.* at 19. Detective Gebhard testified that the snowflake emoji is commonly used to refer to cocaine. *Id.* at 18. Vu later messaged Wahl, "Did you only give me 2k yesterday?" *Id.* at 21. Wahl then

---

[1] Detective Gebhard testified that he believed the "old" referred to cocaine and the "new" referred to methamphetamine. Docket 44 at 16–17.

apologized for her oversight in unintentionally failing to give Vu the full amount she owed her and told Vu that the missing money was "bundled and ready." *Id.*

Based on the Facebook messenger conversation between Wahl and Vu, Detective James Olson of the Deadwood City Police Department requested a search warrant for Wahl's Facebook records. Docket 44 at 88–90. Detective Olson first testified that he received the records from Wahl's account on October 31, 2022, but later corrected himself and said that he received the records from Facebook in August of 2022. *Id.* at 90, 108. Detective Olson documented seven or eight communications that clearly dealt "with the sales and distributions of drugs." *Id.* at 91. Based on this information, and the information shared with Detective Olson by Detective Gebhard, Detective Olson applied for a warrant permitting the placement of an electronic tracking device on Wahl's vehicle, a 2000 Toyota Sienna. *Id.* at 93.

Detective Gebhard testified that the tracking device on Vu's Titan showed that the vehicle visited Torrington on September 11, 2022. *Id.* at 25. Sources of information had tipped off Detective Gebhard that Vu was likely meeting with her supplier in that area. *Id.* at 26. On the way back from Torrington, the Titan stopped at 300 Aspen Court in Lead, South Dakota, which was later determined to be Wahl's address. *Id.* at 25.

On October 17, 2022, law enforcement observed that the tracking device attached to the Titan vehicle showed it was travelling north. *Id.* at 26. Detective Gebhard testified that "[b]ased on her previous movements and conversation [law enforcement] had suspicion that she was going up to the Lead/Deadwood

4

area[.]" *Id.* Law enforcement saw that Vu parked at the Super 8 in Deadwood. *Id.* At the same time, law enforcement observed Wahl's Sienna travel from her residence to the same parking lot. *Id.* at 26–27, 35–36. Based on this information, officers responded to the area. *Id.* at 27. Wahl relocated the Sienna to the parking lot of the Wells Fargo bank, and law enforcement set up surveillance in the vicinity. *Id.* at 27, 35–36.

Detective Gebhard testified that he was parked in the parking lot of Jackrabbit Sports Network, diagonally opposite of the Wells Fargo and on the other side of Pioneer Way and Pine Street from the Wells Fargo bank. *Id.* at 28–29; Docket 40 at 40. Detective Gebhard testified that he saw the Sienna travelling eastbound on Pine Street, just northeast of the Wells Fargo and approaching the intersection of Pioneer Way and Pine Street. *See* Docket 40 at 40; Docket 44 at 29–30. Detective Gebhard testified that his view of the intersection was unobstructed. Docket 44 at 30. Detective Gebhard testified that he observed the Sienna make a wide right turn southbound onto Pioneer Way. Docket 44 at 29–30. Detective Gebhard testified that he saw the Sienna "cross[] over the line into the center lane before drifting back to the outside line[,]" and that if another vehicle had been travelling in the opposite direction, Wahl's turn "[p]otentially could have caused an accident." *Id.* at 29–31.

Detective Gebhard testified that he informed other law enforcement of the traffic violation over a live channel. Docket 44 at 43. South Dakota Highway Patrol Trooper Chad Gamber testified that he participated in the surveillance of Wahl on October 17, 2022, and that he received information about the

5

improper wide turn over the live communication application utilized by the surveillance team. *Id.* at 46–48. Trooper Gamber attempted to make contact with the Sienna and pulled out behind it in between Central City and Deadwood on Pioneer Way. *Id.* at 48. Trooper Gamber pulled the vehicle over. *Id.* at 48; *see* Ex. 1 at 0:00:30. Wahl stopped at the Ace Hardware in Lead. Docket 44 at 49.

Trooper Gamber testified that he approached the passenger side of Wahl's vehicle and advised Wahl that she was being pulled over because she made an illegal right-hand turn. *Id.* at 51–52; Ex. 1 at 0:01:08. Trooper Gamber testified that he told Wahl that she was going to get a warning. Docket 44 at 52. He and Wahl entered his patrol vehicle, where Wahl sat in his front seat unrestrained while he ran her license, plates, and prepared her warning. *Id.* at 53; Ex. 1 at 00:03:07.

While Trooper Gamber prepared Wahl's warning, South Dakota Highway Patrol Trooper Stuart Griffith deployed his police service dog, Sem, on the Sienna. Docket 44 at 56–57, 72; Ex. 1 at 00:07:13. Trooper Griffith testified that Sem is trained to detect a number of illegal drugs, including marijuana, heroin, cocaine, methamphetamine, MDMA, and ecstasy. Docket 44 at 72. Trooper Griffith testified that Sem alerted to the presence of drugs in the vehicle. *Id.* at 80. Trooper Griffith searched the Sienna and located

6

approximately one ounce of cocaine and one ounce of methamphetamine. *Id.* at 81. Wahl was arrested following the search. *Id.* at 59.

Law enforcement also collected a phone from the Sienna. Docket 44 at 99. Detective Olson applied for a warrant to search its contents. *Id.* at 99. The search warrant was authorized on October 18, 2022. *Id.* at 100; Docket 41 at 6–7. On November 15, 2022, Detective Olson requested a search warrant for Wahl's residence and vehicles, which was granted. Docket 41 at 10–21; Docket 44 at 101–102. Both warrant applications contained information about the October 17, 2022, traffic stop and arrest. *See id.* at 4, 16–17.

## DISCUSSION

The Fourth Amendment of the United States Constitution forbids "unreasonable searches and seizures." U.S. Const. amend. IV. "With some exceptions, both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called 'fruit of the poisonous tree,' is inadmissible under the exclusionary rule." *United States v. Lillich*, 6 F.4th 869, 875 (8th Cir. 2021) (internal quotation marks omitted) (omission in original) (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016)).

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (citing *Brendlin v. California*, 551 U.S. 249, 255-59 (2007)). A law enforcement officer may conduct an investigatory stop when the officer has "a particularized and

7

objective basis for suspecting the particular person stopped of criminal activity." *See Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

"A traffic violation, no matter how minor, gives probable cause for a traffic stop." *Wood v. Wooten*, 986 F.3d 1079, 1081 (8th Cir. 2021). The existence of probable cause to stop a vehicle stemming from a traffic violation does not "depend[] on the actual motivations of the individual officers involved," so long as some traffic law was violated. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Wahl raises three objections to Magistrate Judge Wollmann's report and recommendation. First, she contests Magistrate Judge Wollmann's finding that Detective Gebhard's testimony that he observed Wahl commit a traffic violation was credible. Docket 57 at 2. Second, Wahl contests Magistrate Judge Wollmann's finding that information about the traffic violation observed by Detective Gebhard was communicated to Officer Gamber. *Id.* at 3–4. Third, Wahl contests Magistrate Judge Wollmann's finding that "the officers were told

to stop Ms. Wahl's vehicle regardless of whether a traffic infraction was witnessed," based on reasonable suspicion. *Id.* at 4.

### I. Whether Detective Gebhard's testimony that he observed Wahl commit a traffic violation was credible.

Wahl contests the credibility of Deputy Gebhard's testimony that he observed Wahl commit a traffic violation for two reasons.

First, Wahl argues that Detective Gebhard's police report that was filed after the incident was vague, and "allowed him the freedom to testify in any number of ways at the evidentiary hearing without fear of contradicting his prior reports." *Id.* at 2. During the evidentiary hearing, Wahl's attorney attempted to impeach Detective Gebhard's testimony using the report, which had not been admitted into evidence because Magistrate Judge Wollmann found that it was inadmissible hearsay. Docket 44 at 37. Detective Gebhard testified during cross-examination that the report did not indicate which officer observed Wahl make a right-hand turn, the time when he arrived in Deadwood to take part in the surveillance, or where he was located in relation to the intersection of Pine Street and Pioneer Way. *Id.* at 39.

Detective Gebhard was clear during his testimony that he observed Wahl make an improper turn. *See id.* at 39. He also testified that the failure to include in his report which officer observed the turn was a typo. *Id.* The court finds it unlikely that Detective Gebhard would perjure himself by stating that he observed the wide turn when it in fact another officer spotted the infraction, and that the report's omission of the word "I" before its discussion of the traffic infraction does not significantly diminish his credibility. *See id.* The court also

9

does not find the report's omission of the time Detective Gebhard arrived in Deadwood sufficiently material to diminish Detective Gebhard's credibility. Wahl provides no reason to doubt that Detective Gebhard was in Deadwood at the time of the alleged traffic infraction. Neither does the report's failure to list where Detective Gebhard was stopped in relation to the intersection significantly diminish his credibility, because Detective Gebhard was able to clearly mark his vantage point on an aerial map of the scene and testify about his location. Docket 40 at 40; Docket 44 at 27–29.

Second, Wahl argues that Detective Gebhard would not have been able to clearly observe Wahl make her turn onto Pioneer Way from his vantage point at the parking lot across the street because "he was not on the roadway near Ms. Wahl's vehicle[.]" Docket 57 at 3. She contends that because there were several lanes of roadway and a sidewalk between the parking lot and the location of her turn, Detective Gebhard could not have clearly observed the alleged traffic infraction. *Id.* While Wahl is correct that a sidewalk and two lanes of traffic separate the location where Detective Gebhard was parked and the location of Wahl's turn, the sidewalk and roadway do not obstruct the view of the intersection. *See* Docket 40 at 40. In fact, it is hard to imagine a vantage point adjoining the intersection, not located in the roadway itself, from which Detective Gebhard would have had a clearer view. *See id.*; Docket 44 at 30. Thus, the court finds that Detective Gebhard's testimony as to the traffic

violation made by Wahl's vehicle to be credible and overrules Wahl's first objection to Magistrate Judge Wollmann's report and recommendation.

> II. **Whether the government presented sufficient evidence that information about the traffic violation was relayed to Trooper Gamber.**

Wahl's second objection is to Magistrate Judge Wollmann's finding that the government presented ample evidence that information about the traffic violation observed by Detective Gebhard was communicated to Trooper Gamber. Docket 57 at 3–4. Wahl argues that the testimony is not credible because no records were kept of the officers' communications, and neither Detective Gebhard nor Trooper Gamber's reports indicate who they passed the information about the wide turn on to or who received the information. *Id.* at 4.

Detective Gebhard testified that he would have relayed the information about the wide turn over an open channel used by the rest of the surveillance team, and that he would not have known which individual officer heard his message. Docket 44 at 31, 43. Conversely, Trooper Gamber testified that he was informed of the wide turn over the surveillance team's open channel. *Id.* at 47–48. That both officers' reports do not indicate exactly to whom and by whom the information was communicated does not contradict their otherwise consistent testimony about how Trooper Gamber became aware of Wahl's traffic violation. Moreover, Trooper Gamber testified that he specifically informed Wahl that he pulled her over for making a wide turn. *Id.* at 51–52. The court finds it unlikely that Trooper Gamber would perjure himself by testifying that he was aware of the traffic violation contemporaneously with the

11

stop of Wahl's vehicle when in reality he only learned of the wide turn after the fact. Thus, the court finds both officers' testimony as to how the information about the alleged traffic infraction was relayed to be credible and overrules Wahl's second objection.

### III. Whether Trooper Gamber was instructed to stop Wahl's vehicle based on reasonable suspicion developed over the course of the investigation.

Wahl's third and final objection is to Magistrate Judge Wollmann's conclusion that Trooper Gamber was ordered to look for an infraction creating independent probable cause to stop Wahl's vehicle, but regardless to stop Wahl's vehicle based on reasonable suspicion of drug trafficking. Docket 57 at 4. Wahl argues that there was insufficient communication between officers who had knowledge of the investigation and Trooper Gamber for Trooper Gamber to have reasonable suspicion to stop Wahl.

"The collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion, and the collective knowledge can be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers." *United States v. Thompson*, 533 F.3d 964, 969 (8th Cir. 2008). Where the collective knowledge of law enforcement establishes reasonable suspicion as to a vehicle, a radio request to a patrol officer asking that officer to look for a reason to stop the vehicle because controlled substances might be on board is sufficient for reasonable suspicion to be imputed to that patrol officer. *See United States v. Williams*, 429 F.3d 767, 770–72 (8th Cir. 2005) (holding that a radio request to

12

a local police officer requesting that he stop a vehicle suspected of drug trafficking if he could establish independent probable cause imputed the "collective knowledge of DEA team" to the local officer and conferred reasonable suspicion).

Here, Detective Gebhard testified that he met with Trooper Gamber prior to the traffic stop. Docket 44 at 40. He also testified that the investigation into Wahl would have been discussed with Trooper Gamber during that meeting. *Id.* at 40–41. Trooper Gamber corroborated this account when he testified that when he was called in to assist with the surveillance operation, he "was briefed that an individual by the name of Jenifer Wahl is a subdistributor of Amanda Vu, and she was a source of supply for the other." *Id.* at 46. The information communicated to Trooper Gamber exceeds what the Eighth Circuit found sufficient to impute reasonable suspicion to an arresting officer in *United States v. Williams*, 29 F.3d at 770–72. The court finds that sufficient information was communicated to Trooper Gamber to establish reasonable suspicion to stop Wahl's vehicle after being imputed to Trooper Gamber under the collective knowledge doctrine. Thus, Wahl's third objection to Magistrate Judge Wollmann's Report and Recommendation is overruled.

## CONCLUSION

Because there is no constitutional violation, the court does not suppress the evidence gathered as a result of the traffic stop and subsequent searches of

Wahl's home and phone. The court adopts Magistrate Judge Wollmann's recommendation in full and denies Wahl's motion to suppress. Thus, it is

ORDERED that the Report and Recommendation (Docket 56) denying Wahl's motion to suppress is adopted. The motion to suppress (Docket 32) is denied.

Dated February 7, 2024.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE